IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SANDY MARTIN, | ) | |
| | ) | Case No. CV-06-55-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **DECISION AND ORDER** |
| | ) | |
| STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant's Motion for Summary Judgment (Docket No. 51). The Court heard oral argument on March 23, 2007 and now issues the following decision.

## BACKGROUND

Sandy Martin began working for Defendant Idaho Department of Corrections ("IDOC") on July 16, 2000. In March 2003, Correctional Officer ("CO") Cruz, who had told another officer that he "got all crazy" and "forgot what he was doing" when he was around Martin, left his post and followed Martin into the yard of the correctional facility on a couple of occasions.

In August 2003, Martin's supervisor, Lt. Thomason, asked Martin into her

office and had her look at an email on Lt. Thomason's computer. Lt. Thomason then began unbuttoning her shirt as she walked towards a private bathroom to change out of her uniform. When Martin expressed concern about Lt. Thomason's actions, Lt. Thomason responded, "It's ok for you to f--- inmates but it's not okay for you to have a lesbian relationship with me?"

Between September and December 2003, Martin was on approved medical leave. During that time, Sgt. Christensen learned that Martin had appeared on a game show and called Martin to inform her that if she did not return to work, she would be fired. Martin cut her medical leave short and returned to work.

After she returned to work, Martin received a performance evaluation in January 2004. During that evaluation, Sgt. Christensen told Martin that she was no longer allowed to work with the inmates in the day room because she was too cute and bubbly and had a cute butt.

Finally, in January or February 2004, Martin apparently called for a "code blue," requesting assistance at IDOC, but IDOC staff were very slow to respond. Shortly thereafter, Martin resigned from IDOC.

## ANALYSIS

**I.     Summary Judgment Standard of Review**

One of the principal purposes of the summary judgment "is to isolate and

**Memorandum Decision and Order - 2**

dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

     The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

     The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply

point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

## II.  Motion for Summary Judgment

IDOC seeks summary judgment on Martin's sexual harassment, retaliation and constructive discharge claims.[1]

---

[1] Martin conceded dismissal of her breach of the implied covenant of good faith and fair dealing and intentional and/or negligent infliction of emotional distress claims.

**Memorandum Decision and Order - 4**

A.      **Sexual Harassment Claim**[2]

Martin's sexual harassment claim is based on a hostile work environment theory. Her claim includes three primary allegations.[3] First, in March 2003, CO Cruz, who had indicated that he "got all crazy" and "forgot what he was doing" when he was around Martin, followed Martin into the yard on a couple of occasions, and nobody at IDOC did anything to correct the situation when she complained about it. (Martin Depo., 26:11-28:20; 30:16-31:5). Second, in August 2003, Lt. Thomason started unbuttoning her shirt as she walked towards a bathroom to change her clothes and, in response to Martin's concern that inmates could see, stated that it's ok for Martin to f--- inmates but not okay for her to have a lesbian relationship with Lt. Thomason. (Martin Depo., 35:19-37:12). Third, in January 2004, Sgt. Christensen told Martin, during a performance evaluation, that she had a cute butt and was too cute and bubbly to work with inmates. (Martin Depo., 41:7-17).

In order to establish that she was subjected to a hostile work environment,

---

[2] The IHRA is interpreted by Idaho courts to parallel the protections of Title VII, and Idaho courts "are guided by federal law" in interpreting the IHRA. *See* Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, 851 P.2d 946 (1993); *see also* O'Dell v. Basabe, 810 P.2d 1082 (1991). Accordingly, Martin's IHRA claims will remain or fall with her Title VII claims.

[3] Martin makes other allegations that other employees were "rude" to her, she received a get well card signed by co-workers and inmates, and she received a low performance evaluation rating that was later upgraded. However, such allegations are insignificant and do not require a separate evaluation.

**Memorandum Decision and Order - 5**

Martin must show: (1) that she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  *See* [Porter v. California Dept. Of Corrections, 419 F.3d 885, 892 (9th Cir. 2005)](#) (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)).  The Court must also determine whether Martin's claim is time barred.  *[Id.](#)*

    The first two elements are met relatively easily in this case.  Telling Martin that she has a cute butt and suggesting that it is okay for her to f--- inmates but not have a lesbian relationship with Lt. Thomason can be considered verbal conduct of a sexual nature.  Moreover, based on the context in which the statements were made, and based on Martin's complaints about the comments, one can easily conclude that Martin did not welcome the conduct.  However, Martin's claim runs into trouble with respect to timeliness and the third element – whether the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.

    Under Title VII, a plaintiff has 300 days from the date the alleged unlawful employment practice occurred to file a charge.  See [42 U.S.C. § 2000e-5(e)](#).  Martin filed her charge on November 9, 2004.  Therefore, only the Sgt.

**Memorandum Decision and Order - 6**

Christensen event occurred within the 300-day period before Martin filed her charge.

However, a charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period. *See Morgan*, 536 U.S. at 122. Thus, Martin's hostile work environment claim is not time barred if the CO Cruz, Lt. Thomason and Sgt. Christensen events constitute one unlawful employment practice. *See Porter*, 419 F.3d at 893 (citing *Morgan*, 536 U.S. 101(2002)). To determine whether the events comprise one unlawful employment practice, the Court must consider "whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, or were perpetrated by the same managers." *Id.* (internal quotations and citations omitted).

In this case, the events were not perpetrated by the same manager – CO Cruz allegedly committed the first offense, Lt. Thomason allegedly committed the second offense, and Sgt. Christensen allegedly committed the third offense. Moreover, only the last incident actually resulted in some type of employment action – Martin being told that she should no longer do Team Case Management contacts in the day room. (Martin Depo., 41:7-17). Finally, the events were not

**Memorandum Decision and Order - 7**

relatively frequent – the second event occurred five months after the first event and the third event occurred five months after the second event.  Although "relatively frequent" is a somewhat loose term, when coupled with the fact that the events were not perpetrated by the same individual and did not result in the same type of employment action, these three events, which took place over a period of almost a year, did not occur relatively frequently.  Accordingly, the Court finds that the three events do not constitute one unlawful employment practice.

Additionally, the Court finds that the Sgt. Christensen event, the one discrete event that is not time barred, was not sufficiently severe or pervasive to alter the conditions of Martin's employment and create an abusive work environment.  A single incident of harassment can support a claim of hostile work environment when the incident is extremely serious, such as rape.  See *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002).  However, that is not the case here.  Sgt. Christensen's statement that Martin had a cute butt and was too cute and bubbly to do Team Case Management contacts, while inappropriate, does not amount to the level of severity required by Title VII.  Title VII does not prohibit simple teasing, and offhand comments and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment.  See *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  The Supreme Court has "made it

**Memorandum Decision and Order - 8**

clear that conduct must be extreme to amount to a change in the terms and conditions of employment. . . ." *Id.* Accordingly, the Court will grant summary judgment in favor of IDOC on Martin's hostile work environment claim.

### B.     Retaliation Claim

To make out a *prima facie* case of retaliation under Title VII, Martin must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between her protected activity and the adverse employment action.  *Porter*, 419 F.3d at 894; *see also Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006)*.

#### 1.     Protected Activity

Martin claims that she engaged in a protected activity when she complained to IDOC that Lt. Thomason sexually harassed her.  IDOC argues that the complaint was not a protected activity because Lt. Thomason did not sexually harass Martin. However, it is not necessary that Lt. Thomason's actions were actually unlawful, so long as Martin had a "reasonable belief" that Lt. Thomason engaged in an unlawful employment practice.  See *Little*, 301 F.3d at 969.  The Court finds that regardless of whether Lt. Thomason actually sexually harassed Martin, there is at least a genuine issue of disputed fact as to whether Martin reasonably believed that Lt. Thomason sexually harassed her when, while unbuttoning her shirt as she

**Memorandum Decision and Order - 9**

walked towards a private bathroom to change out of her uniform, Lt. Thomason stated that it was okay for Martin to f--- inmates but not okay for her to have a lesbian relationship with Lt. Thomason.

### 2. Adverse Employment Action

Adverse employment actions include "actions materially affecting compensation, terms, conditions, or privileges of employment." *Little*, 301 F.3d at 970 (internal quotations and citations omitted). Traditionally, the retaliatory conduct in a retaliation case "takes the form of discharge, demotion, failure to promote, or similar actions that clearly inflict tangible, employment-related harm upon the employee." *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997). However, conduct such as a negative job reference can also be considered retaliation. *Id.* at 676.

Martin makes several general allegations, most of which either do not suggest a material affect on compensation, terms, conditions, or privileges of her employment or do not find support in the record. The only allegations which potentially qualify as adverse employment actions are Martin's assertion that IDOC denied her a training opportunity that would have allowed her a promotion, her allegation that she was threatened with termination if she did not prematurely return from medical leave, and her allegation that the response team did not

**Memorandum Decision and Order - 10**

respond to her code blue.

With respect to the training opportunity, Martin suggests that IDOC retaliated by not allowing her to run the stop program, which, she states, would have been helpful in achieving a promotion. (See Martin Aff., ¶ 9). However, there is no evidence that running the stop program would have resulted in a promotion or that Martin was actually refused a promotion. Thus, Martin fails to show a tangible, employment-related harm. Moreover, Martin was unable to testify that the refusal to allow her to run the stop program occurred after she made her sexual harassment complaint, and there is no such evidence in the record. (Martin Depo., 111:17-25). Thus, Martin also fails to show that a causal link existed between her protected activity and IDOC's refusal to allow her to run the stop program.

As for the threat of termination, Martin contends that IDOC violated the FMLA when Sgt. Christensen requested that Martin prematurely return from medical leave or be terminated. However, Martin was not terminated. Moreover, had Martin believed Sgt. Christensen's request violated the FMLA, Martin could have brought a cause of action for violation of the FMLA.

Finally, Martin argues that she was retaliated against when the response team failed to timely respond to her code blue. Clearly, a failure to timely respond

**Memorandum Decision and Order - 11**

to Martin's code blue affects the conditions of her employment by potentially placing her in grave danger.  Thus, the untimely response can be considered an adverse employment action.  The Court must therefore consider whether there is a causal link between Martin's sexual harassment complaint and the untimely code blue response.

### 3. Causal Link

Martin suggests that after she made her sexual harassment complaint, Lt. Thomason began a pattern of harassment in retaliation for the complaint.  (Martin Depo. 70:20-25).  Martin testified that she "felt like that after I made that allegation, that things were not being done.  I mean, when you call a code blue in our profession, you hope there's somebody there to back you up.  They have a certain amount of time to respond."  (Martin Depo. 72:11-16).  Martin then stated: "I felt like it was retaliation on the staff, on people that are there, I feel like that when you do something to Lieutenant Thomason, things change.  You just – I don't know how to explain it to you."  (Martin Depo. 72:25 - 73:4).  However, when asked directly whether there was "a factual basis that led [Martin] to believe that Lieutenant Thomason prevented people from responding" to the code blue, Martin unequivocally responded "No."  (Martin Depo. 73:5-8).  Thus, there is no evidence of a causal link between Martin's protected activity and the adverse

**Memorandum Decision and Order - 12**

employment action.  Accordingly, the Court will grant summary judgment in favor IDOC on Martin's retaliation claim.

### C. Constructive Discharge Claim

"A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable." *Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (internal quotations and citations omitted).  Like a hostile work environment claim, a constructive discharge claim "results from a series of discriminatory actions on the part of the employer that are in the nature of a continuing violation." *Draper v. Coeur Rochester*, 147 F.3d 1104, 1110 (9th Cir. 1998).  Summary judgment is appropriate on a constructive discharge claim where the decision to resign was unreasonable as a matter of law.  *Lawson*, 296 at 805.

For the same reasons discussed in the hostile work environment claim section above, the Court finds that Matin did not encounter discriminatory actions in the nature of a continuing violation.  Thus, Martin's decision to resign was unreasonable as a matter of law.  Accordingly, the Court will grant summary judgment in favor of IDOC on Martin's constructive discharge claim.

**Memorandum Decision and Order - 13**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 51) shall be, and the same is hereby, GRANTED.

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.



DATED: **June 7, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge